Thank you. I'm going to use my time this morning to try and put a finer point on a few key issues in this appeal, starting with the lower court's use of a six-year look-back period. Now at the outset I recognize I face a bit of an uphill challenge. Can I jump in, Mr. Owens? I don't mean to hijack you from the beginning, but there's some structure here that I think would be helpful to us, both substantively and procedurally, and you're going to jump into the six-year look-back. I get that, but let's frame that, you know, at the beginning, who had the burden of proof at the evidentiary hearing? I believe the burden of proof at the evidentiary hearing was on the trustee. All right. I thought that the court, through summary judgment and its interim order, had established no records and those records were needed, shifting the question for the evidence to be justification, which would be your burden of proof. So how do you see it and what are you appealing exactly? Yeah, it's an interesting question because it is an interesting procedure. I think that the burden shifted as to summary judgment. My understanding of the burden was that the burden on summary judgment was originally on the trustee. Once the trustee made the prima facie showing, then the burden shifted to my client, but with respect to the reasonableness of the look-back period, which was the subject of the evidentiary hearing. I guess, let me again, and I apologize just from the beginning to interrupt, but this is important. So the standards, as I understand it, is one, the demonstration that the debtor failed to maintain and preserve adequate records, and that's not really from what I can tell in dispute. Two, this failure rendered it impossible to ascertain the debtor's financial condition and material business transactions. Now, that seems to be what the court found on summary judgment, and one reading is that then it transferred to the next step, which is the burden shifts the debtor to justify the inadequacy or non-existence of the records, which gets, you know, in one way back to how long do I got to get you to your six years is too long. But where, structurally, where is that, it happened too long ago, where does that fit in? Is it after the burden shifts as the justification, or is it the failure rendered it impossible to ascertain the debtor's financial condition material business? Because we don't know what happened with these couple of loans. Sure, and so my position is under 72783 that the, that there is a temporal aspect to that standard, and that it's a reasonable to the record-keeping responsibility under 72783. Is that the failure to render it impossible? Because it seems almost that once you admit there was no records, then it kind of follows that it renders it impossible to happen with that transaction. Well, and so I don't know if there was an admission as to no records, are you referring specifically to the Pullman loan? Well, that's ultimately through the consequence of all proceedings, the one, but as it, you know, it was kind of a winnowing of issues from the complaint and the five loans, then there was disputed questions of fact on two of the loans, those kind of fall off. You get to Pullman, Gage, and Bell, and the court makes its finding as to no records and a failure, that failure rendered it impossible. Well, and so I guess I would dispute with respect to the finding of no records, there were some records, they just weren't deemed adequate with respect to Pullman. There was a promissory note, there were check registers, and then there were no further records with respect to Pullman, but we should, it's important to step through these, because one's definitely summary judgment, some's evidence, and we're not sure what to do with that, because evidence is antithetical to summary judgment. So what we need to understand, this is critically important as to the So, you, are you appealing the justification determination, or are you appealing that the second prong of the case, the failure rendered it impossible to ascertain the debtor's financial condition and material business transactions, or both? I think it's both, your honor, and you raise an interesting issue that I don't think the parties took head-on in their briefing. I'll admit I'm an appellate specialist, I'm not a bankruptcy specialist. It was extraordinary for me when I reviewed this case, that you would have in the midst of a summary judgment proceeding, a pause, and then an evidentiary hearing on one of the elements of the claim, a factual finding made with respect to that element, and a resumption of summary judgment based upon that factual finding. And I agree with you that it does make gleaning the standard of review more difficult when you have essentially a little mini-trial in the middle of summary judgment on an essential element of the claim that was being prosecuted by the U.S. trustee here. Let me ask a question. Let me ask a question. So, based upon what you've suggested in terms of the process, the first part of the case was determined on summary judgment, as Judge Spraker indicated. The court rules that the trustee or the United States trustee's office has established a prima facie case on summary judgment. That review then would be whether or not there were disputed issues of material fact related to the court's ruling, right? And that would be de novo review on that on that portion, correct? The second part of it was based on evidence, but then it was incorporated into a final determination that is granting of summary judgment. So, my question is, how do we deal with the second part of it? Is it reviewed under the clearly erroneous standard, or because it's part of a summary judgment granted in favor of the trustee, is it de novo? Or is it because it is a mixed question of law and fact that it becomes de novo anyway? I think it's the latter, Your Honor. Again, the procedure is not one that I'm familiar with, but I think that there is a mixed question of law and fact here. And what is that? Give me exactly what that mixed question of law and fact is. The issue of the maintenance of these records for a reasonable period of time, and the determination that the reasonable period of time was six years, and not the three years that the records were offered by the debtor in this instance. Doesn't that determination, jumping to the last point, doesn't the determination of what is reasonable, one, isn't that fact specific, and two, isn't that inherently a disputed question of fact that was decided on evidence? I think it is a question of, I think the case law is clear that it's a question of the totality of the circumstances. And in this instance, I think that's how the court decided it. It pressed pause on the summary judgment proceedings, decided it would take on that issue of triable fact, and hold a mini trial in the middle of summary judgment, determine that issue of fact, and then go back and grant summary judgment. And so to that extent, again, I think it presents a mixed issue of fact and law. The court clearly made factual determinations. Are we bound by this abeyance process? Because nobody objected to the procedure, and nobody's raised it on appeal. So really, I have not heard of this, but really, as long as it's proper, can't we recognize it for what it appears to be, which is partial summary judgment followed by a partial trial on a disputed fact? I don't see in the record that there was an objection that was raised to this procedure in how it kind of rolled out sequentially. I don't see that in the record. But I do think that it does impact the standard of review. And it's hard when you take a square peg and put it in a round hole, when you take a disputed fact with respect to the record-keeping and what was a reasonable period of time, you make a factual determination on that, and then go ahead and grant summary judgment. When, if it was a disputed fact, in most instances, summary judgment would have been denied on that basis. And so... Right, but that's the whole point. I mean, isn't it really what... because nobody's objecting, nobody's alleging harm from that process. Isn't it, you know, one option is just to call it what it appears to be, which is summary judgment followed by a mini trial, you know, a trial on a discreet issue, which is allowed under the rules. I understand... Yeah, I understand your point, Your Honor. And we didn't raise this procedural point, even though, again, it was new to me. I thought it was odd how it rolled out. But given the state of the record, and given how it did proceed, it wasn't a main point on this appeal. I'm doing my best to respond to your question. It is, it is sort of a... I don't know how to categorize it. It's an interesting procedural issue with respect to how a reviewing court is to view these findings. And in our position is, because they were made in order to facilitate the ultimate summary judgment ruling, that they should be viewed as mixed law, on fact, subject to this court's standard of review, in which it reviews all summary judgment rulings. The fact that the court took this detour and made these factual determinations in the middle of a summary judgment motion, or deciding a summary judgment motion, in our eyes, should have meant that the summary judgment should have been denied. But it wasn't an objection that was raised. The parties went along with it. But for purposes of this court's review, I think it has to be viewed as one part of a continuous summary judgment process. And that's why we've raised the issue that we have with respect to the I think that that is something that this court can look at de novo and say... But isn't that, I mean, I understand if we, if we hew to the form, I get your point, but substance seems to indicate there was a mini, there was a trial on that question, on the justification question, which incorporated your look-back. And, you know, I was going through the the transcript this morning, and, you know, it was argued at the beginning, middle, and end that there is a presumption of two years, you should double that, that would give you four, three or four is appropriate, six is way out of line. And it was argued, it was, the sophistication was argued ad nauseum, and evidence taken, and the court made a factual finding. So are we really supposed to ignore the reality of what happened? I don't know that you need to ignore it. I'm not asking you to ignore it. That wasn't my position. I just think you need to look at it with respect to the totality of what was raised by the US trustee, by the motion that was made, by the relief that was sought, and the court decided to take a different route to get there. But ultimately, it was a summary judgment ruling that that was the predicate for the entry of judgment in this adversary proceeding. And so I think the court needs to take the bigger picture and not look so much at how the court got there, but what the court was trying to do from beginning to end, and that is to decide a summary judgment motion and determine whether the US trustee was entitled to summary judgment on these particular claims. I understand, and Judge Brand, I would, I feel bad getting to two minutes. I would ask to extend the time a little, because we haven't even gotten to the substance. I would like, with leave, I would like to ask a substantive question. So let's, I understand your argument. Let's talk about the six years. So why, assume that's being viewed on clearly erroneous. Why would it be clear error in this point to find that it was reasonable primarily for the Pullman loan, the $380,000 and change for which, you know, he testified it was used to buy stock and buy an investment in Oakland that is nowhere in documents. Why isn't that enough alone to be reasonable based upon the record before us? I understand your question. I think that there is a balancing that is occurring here when you have a line drawing exercise. And you talked about the justification question and the look back period question being raised in the evidentiary hearing. And I think that the two are interrelated to the extent that you draw the look back period even further, you're going to create new issues with respect to the justification issue. And so the line drawing, I think that ultimately needs to be determined is whether the look back period is so long that you're going to sweep up innocent but unfortunate debtors like Nebit with record keeping errors and paint them, pardon me, with the same brush as those who've been deemed to be intentionally destroying records, which was never found here. That's not quite the test. And Judge Latham really was not too sympathetic to the record demonstrates that he was detailed and evolving, even after granting summary judgment in his view of what happened and the requirements of the 727 83, because he granted summary judgment as to gauge and bell overwhelmingly, and then went and accepted the evidence at trial to find that there was no, no violation, but as to just the totality of missing evidence of what happened to the loan proceeds in Pullman, that that's different. And Keneva and others say, if it's a significant transaction, and there's no documents, you know, it's prima facie as to, you know, the violation. And if it's big enough, and if it's sophisticated debtor, why isn't six years, you know, for 400,000, roughly 400,000? Why doesn't he have to maintain some record? Because he's done it with the others? Well, and what what he did produce is similar to what he produced in the bell loan, which the trial court found to be sufficient as to all of the bell loan, except for $9,000, I believe, which was promissory notes and check registers that check register through his testimony indicated that money was used for living expenses, whatever expenses, Amex expenses, there's no similar check register. And his testimony is that he purchased an investment. Oh, Quinn. Right. And so his testimony, his testimony on that, I believe, was further that the Pullman loan was different because Pullman wired the initial 330,000 directly into a bank account, which was then used through Wells Fargo advisors to make the purchase of the equity interest in Oh, Quinn. And so the the explanation offered by Nebit was that he didn't have that documentation, because Pullman had a wire transaction, transferring those funds directly, and he didn't receive that in any sort of written records with respect to that initial. This, I think, was Judge Latham's overall underlying problem. If you are buying debt or equity investments in the tune of hundreds of thousands of dollars, you get something back. Right. You get a certificate, a membership interest, a debt instrument. And, you know, Quinn, you know, the debtor testified that it filed bankruptcy. I would think even a schedule from the bankruptcy showing the the obligations or the interest, the co-owners would have been some declaration in some written document. There was nothing there for close to 400,000. I appreciate your question, Your Honor, and I understand where you're coming from. I documentation that was given in exchange for the investment that there was 28,000 that that that he was a member of Oh, Quinn, not a managing member, mind you, but a member, which is what you would expect when you when you invest in in a company like that. So I think that's as far as the record goes. And with respect to, again, the promissory note that documented the loan, there was the argument that was made that with respect to Quinn, that those records were no longer available to NABIT. And that was the position that he took with Quinn. And so I guess our position and then I'll reserve whatever time I have. I'm not sure if I have any left, but is in some ways, when you go back far enough, you're going to find these sort of record keeping deficiencies. And when you draw the line, as the court drew it here, you are are creating tension with the purpose of the Chapter 7, which is to give the honest but unfortunate debtor a fresh start. And in this case, there was no finding of destroyed documents or hideout. That wasn't required. No, no, that's true. And I think that that's the danger here with 72783, because there is no intent to defraud. But when you draw the look back period long enough, you'll have people who are not found to have committed any fraud swept into the same circumstances as those who do. And so with that, I'll reserve whatever rebuttal time the court may allow. All right. Thank you. All right. Mr. Clemmonson, go ahead. Thank you, Your Honors. May it please the court, Russell Clemmonson, interning for the U.S. Trustee. I'd like to start out by addressing the questions the court had about the standard for review. We believe that the evidentiary hearing that was conducted in this case, and it was conducted without objection, receives a clearly erroneous standard of review. But he can't. Go ahead. OK, Gary. Well, no, my question goes to what Judge Spraker raised earlier, and that is the determination of whether or not there was justification established is not just a question of fact, is it? The fact of the lack of records in and of itself doesn't prove a lack of justification. It requires consideration of the circumstances surrounding the debtor, the circumstances of the timing of when the records were or should have been produced. And it requires a consideration of the sophistication. So it's application of facts to the circumstances, to the requirements, to the to the standard, which would mean that it is, in fact, a question, a mixed question of law and fact. It's not simply it's not simply a question of fact. And we agree with that. So that standard of review of mixed question of law and fact is de novo review. It's not a clearly erroneous standard, correct? Well, no, we disagree on that point. The mixed questions of law and fact are reviewed. The questions of fact are reviewed under the clearly erroneous standard. And the application of those facts to the law is reviewed de novo. And I think so. So the fact that there were no records is the fact that's true. The explanation for why those records don't exist, the reason, the sophistication, the level, the judge's application of that fact, there were no records to his determination. We reviewed de novo. I agree. There was a lot of fact finding that that led up to that application and that we think receives a clearly erroneous standard of review. In other words, Mr. Nevitt's sophistication, the records he did maintain, why he didn't maintain certain records, absolutely erroneous. The question is the determination of justification, whether or not the debtor was justified under the circumstances, his application of facts to the law. And that is the determination that's reviewed de novo, not the question of was he sophisticated, not the question of whether the records existed. Those are fact questions he found. But when he determines it's not justified, I don't believe it's justified. That's not a factual finding. That's a legal determination. Isn't it a conclusion of law? I agree with that. My only my only caveat would be that some fact finding leads up to that determination. And so there is, I think, a break where you where you use a clearly erroneous standard in the fact finding portion. And then you move to de novo when you talk about the application of the law to those facts. So if they were if they were suggesting there were records and you were suggesting there was a lack of records, the court resolved that question and said, I believe that the records were sufficiently maintained in this case for this portion of the loan. That would be a factual question. Yes. The question of whether or not he should have had those records and whether his failure to have those records was not justified under these circumstances is a question that is de novo review, not factually review. I think that's that's correct. It's just that you gather together that body of evidence at trial or the evidentiary hearing of this case, and then you apply that body of evidence. To the law. And then you grant summary judgment in this instance after at that point and say there is no disputed issue of fact with regard to justification. I rule as a matter of law. He loses on this issue. That's what he decided. I think that's correct. And as to the evidentiary hearing question, we cited the Halum case where this court found there was nothing improper about conducting an evidentiary hearing or a mini trial, however you want to call it, before making the legal determination. So, counsel, let me take you back another step, and that's to your your prima facie case. You come into court and say initially in your complaint there's a million and a half dollars worth of funds that aren't accounted for. You go to the summary judgment proceeding. At that point, you reduce the amount to nine hundred and fifty thousand dollars. Ultimately, you after trial, the amount is reduced to three hundred eighty one thousand dollars. So what evidence did you have when the judge granted summary judgment on the issue that you have proven he didn't didn't maintain adequate records and that it was impossible for you to determine his financial condition at the time of filing? Because did you do anything more than present the argument? There are no records for these loans. Well, the parties had actually conducted discovery for almost two years. There were four ruled out 2004 exams that were taken. So there are all the records that Mr. Nebit said he had had already been produced. And then we we argued that we don't we simply don't have anything for these five loans. It was ultimately whittled down to three. So at the point we file our motions for summary judgment, we say, you know, your honors, there's no records for Pullman, Bell or Gage. And then the evidentiary hearing is conducted. I appreciate that. Let me stop you there. So you say there's no dispute that there's no records, but this test isn't just a question of whether there's records. The test is whether the debtor has presented sufficient written evidence which will enable the creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past. That's Koneva. That's a standard that you have to meet in order for the prima facie case to be established. What evidence did you present that you had gone through what he had provided? Could not determine what his financial condition was on the date of filing because he didn't have records that were six years old, other than to say he doesn't have records for the loans that are six years old. Well, we there were certain records that were produced, they were produced. No, no. What evidence did you produce? Did you have an accountant examine and say, look, we can't account for this money and we believe he's in possession of it. We believe he has offshore accounts. We are led to believe that he is using money that's not accounted for because his tax returns don't reflect it. His expenses are way above what his income is. Did you have any other evidence to suggest that the money that he couldn't account for that was more than six years old affected his present condition, that you couldn't evaluate what he did actually produce and determine what his financial condition was? Well, in short, we conducted four rule 2004 examinations. We started out with a schedule, schedules that had seven million dollars in loans. And we asked him to document, just document what he did with the monies. And two years of discovery went forward in this case and documents were exchanged and testimony was taken. And so at the point we filed the motion for summary judgment, we did not believe that he could prove up Pullman, Bell or Gage. But he didn't need to prove up Pullman, Bell or Gage. He needed to prove that absolute completeness of record keeping isn't the requirement. We go back to the standard, which is that you couldn't ascertain. It became impossible for you to ascertain his current financial condition. And so he disputed that you couldn't do that. He said that wasn't relevant or necessary. But the court ruled on summary judgment and granted it in your favor when there were disputed issues about whether or not the standard had been satisfied because you base your determination that the court was correct solely on the on the lack of records for the six loans that you've identified. You don't you don't suggest you had other evidence. Right. That that that would would have. And if you had other evidence, wouldn't it created the need for a trial on whether or not there was enough evidence for the determination of his current financial condition to be made? Well, the court never granted summary judgment until the very end. So at the point that the. No, no, stop. He granted summary judgment at the very beginning before he ever got to the evidentiary hearing. He already ruled you'd met your your requirement. He was only going to try the justification question. He did. That's what the way the record reads. The record reads. The record reads as follows. The bankruptcy court acknowledges this standard, citing the very. I'm sorry. The court has considered the plaintiff's motion for summary judgment, defendant's opposition, the plaintiff's reply, the party's arguments at the hearing on the matter and the court's prior orders to fall for the following reasons. The court grants the most plaintiff's motions focused on five loans, totaling one point five million dollars in opposition. The defendant produced some records explaining how he disposed of two loans, thus raising a genuine material fact over the adequacy of his record keeping as to them. The court consequently denied summary judgment on those loans. But the defendant did not produce records for his disposition of the three loans. Gage, Pullman, Bell. And the court agreed that without records of where the combined nine hundred and twenty five thousand dollars went, plaintiff could not ascertain defendant's financial condition on the petition date. So the so the court concluded the plaintiff had met a prima facie burden as the seven twenty three a claim period. It was based on a lack of records. It didn't take into consideration that there was a disputed material fact that the plaintiff had raised in a response. It just said, I'm going to resolve the dispute if there aren't records. That's insufficient. You lose. Isn't that the way the court ruled on this before it ever got to the evidentiary hearing? Well, prima facie is not the grant of summary judgment. Prima facie is just our initial burden. But in this case, if you if you couldn't get past prima facie, he never has to put on a trial for justification. He's not required to prove that the records are sufficient. It's your burden to prove that it's inadequate so that you have the ability to say we can't determine he should be denied a discharge in this case. It's always your burden. It's never shifts to him. In this case, the court made the entire justification defense, his burden of proof, and then granted relief against him without requiring you to put on anything. I accept a lack of records. There was look, we can't we don't have records, Your Honor. So therefore, grant us denial of district. Well, the burden shifting occurs regardless of whether the matter is determined on summary judgment. We, as the moving party, had the burden to make a prima facie showing that there weren't records from which this debtor's financial condition could be ascertained. And then the court found, and we think properly so, that we had met our burden. And then the court said, but there are disputed material issues of fact that really more go to justification rather than the initial prima facie case. So just to clarify, it's your position that simply demonstrating to the court that over some length of time before the filing, the debtor didn't have a complete set of records and that there's are that's enough for you to establish the prima facie case. It doesn't matter how long a period of time it was. It doesn't matter how small the amount of money is. All that's relevant is the debtor's inability to explain through recordkeeping that there's some transaction that occurred in the past and then you've met your prima facie case. I wouldn't describe our burden as that limited at all. And I don't think that I don't think our burden was was in any way that limited. I think we had to make a showing that I mean, some of this gets mixed together and it's hard to keep a complete separation between no records and justification because it kind of all goes together when you're trying to figure out where seven million dollars went. But in short, we identified loans that had not been properly documented in our view. And the court said we thought we had met our burden on both prongs candidly at the point the court decided to conduct its evidentiary hearing. But the court found differently. The court found, no, I think there's I think there is a disputed issue of material fact essentially on justification. Yes, counsel. Counsel, what I'm really getting at, I guess, is isn't the proper procedure that when you suggest that you don't believe you can you can establish that what you can ascertain that the debtor's current financial condition or relevant business transactions because there's a lack of records, the debtor then gets the opportunity to put on what it believes is the reason why there is. And then the court has to weigh and balance those facts and determine, yes, you've met a prime case and then ruling forward after he resolves those disputed facts into a trial of the question justification. And then if he doesn't find justification, he then ultimately enters a judgment in favor of the United States trustee or denies the relief that's requested. I think that sums up what happened here, Your Honor. Yes. No, that's the proper procedure would have been a trial on all of the questions. He already granted you summary judgment for the very outset on your prima facie case without considering any of the evidence evidently that the debtor presented in terms of tax returns, in terms of the years of bank statements, in terms of the three years of financial records that you did have to determine it, said that didn't matter. You argued no loan documentation for this period. That's sufficient to get me past my standard of proof and therefore grant me summary judgment. I don't think I you know, we argued that the burden had been met and I think that was appropriate because the burden has shifted to Mr. Nevitt to essentially show justification. Only after you proved a prima facie case and that determination was made on what the judge determined were undisputed material facts. Wasn't that ultimately tried as well? Let me interject here, if I may. And the trial went beyond, it encroached onto matters that had ostensibly been decided on summary judgment. And that's why the gauge loan was taken off the table. And that's why all but nine thousand dollars of the Bell loan otherwise, you know, because the court accepted that adequate records were made. So, I mean, didn't didn't this the the trial is, you know, I'm going to call it, didn't it actually include more than just justification? I think it did. Did the trial ever address the question of how you, the United States trustee's office, were unable to ascertain the debtor's present financial condition and relevant business transactions through the through the evidentiary proceeding? Or was that a conclusion that the court had already reached before so that the evidence that was relevant to the Bell loans and the other loans was based was related to justification, not to go back and revisit the question that was summary judgment had already been granted on? I do think that I think Judge Spraker's observation is correct. Essentially, the record was reopened during this evidentiary hearing. And both are our prima facie case and the justification were both revisited in connection with that evidentiary hearing. And that ultimately is that reflected in the court's final order that when he grants summary judgment, that he's gone back then and revisited the issues. That's that's not anywhere in his written decision that he finally enters. He only addresses the question of justification, doesn't he? Well, he's quite specific as to the records that were produced by the time by the time the judge makes his findings. As to Pullman, he finds that the only record was a checkpoint check register showing payment of $27,934 in business expenses. In Bell, he gave Mr. Nevic credit for producing the checkpoint register showing $491,000 was used for business expenses, even though that contradicted his testimony that the money was used to invest in location-based technologies. And in Gage, no records were produced. And yet the bankruptcy court gave Mr. Nevic credit for his testimony that he paid Mr. Gage $23,000 in debt service. And so essentially the lack of records was justified. So I want to ask a question that kind of circles back to what Judge Gann was talking about. You've got for your prima facie case, you've got. You say we've got a loan and there are no records for it. Is that all you need to do to establish your prima facie case? Because if there are no, it's kind of seems like it's kind of circular. If there are no records, then it is impossible to determine the debtor's financial condition with respect to all of its transactions because there are no records. We don't know what happened regarding that loan. So what more would you have to prove in order to establish that the prima facie aspect of your case after you've shown that there was a loan, there were no records established in the loan or what happened to the money? What next would you need to show in order to establish the second prime of your prima facie case that you can't determine the financial condition? And I think that's correct. And I think that's in Keneva and Fox, where a summary judgment on a 727-83 wound its way up to the Ninth Circuit. The court looked at very vague explanations as to why there were no records, but found that and found that the burden of proof had been met as just showing of no records. So I'm not saying that we have, we absolutely had a burden of proof to demonstrate a prima facie case. And it is relevant about what we received and what we could ascertain through a summary judgment. We had conducted two years of discovery and we had taken four Rule 2004 examinations and the debts involved seven to eight million dollars. And so I think we had made our case at that point. When a debtor can only come up with a handwritten or a self-created check register that contradicts his testimony. I don't think, I don't know how much more we could have shown at the point that we were determined to make our prima facie case. So you're fine because you couldn't tell, you couldn't determine his financial condition because you didn't know really what happened with the loans. Exactly. But counsel, what I'm confused is, is that if you look at Tran, you look at Keneva, you look at Hussein, they all involve transactions that were relatively close in time to the filing of the bankruptcy case. There were assets that weren't explained within years of the filing. We're talking about one or two years of filing. In Keneva, we have a transfer with five hundred thousand dollars within a year of the filing to somebody that's completely undocumented. In Tran, we have loss of jewelry and other assets that are contemporaneous with the filing with no records. Here, you're alleging that you couldn't determine his financial condition on the before. So that's why I asked you, wouldn't you have an obligation to to explain to the court that that money is relevant because we believe it's either still in existence, in his possession, being utilized by him, concealed by him, that it hadn't been dissipated or spent over that six year period because we have something that demonstrates there's an inconsistency here, not just the lack of records. I agree that we needed to, and we think we did, establish a need for these records, as did the trustee. The trustee asked for this information early on in the case. And so, you know, it certainly is relevant as to how long the transactions took place back in time. We're not saying it's not. What we are saying is that it's not, as a matter of law, too long to look back six years under the facts and circumstances of this case. And so we think all of that becomes relevant, not just at the justification stage, but at the initial stage to show no records. In other words, this was a sophisticated financial business person who borrowed money from the trustee, knowing full well enough that it might be a substantial portion of their net worth, and if not more than that, and what he did with the money could not be explained. And so, you know, we were presented with a case with very large debt owed to individuals, and we just tried to figure out what happened. And we didn't get a lot in the way of records. And then we progressed down and did Rule 2004 exams. We made our best efforts. I think the parties essentially cooperated to the point where there really isn't a disputed issue of material fact as to what did exist or did not exist. And I think that's important for this case because we don't disagree on what was and was not produced. There was no argument that the records were destroyed. You know, I had a flood. I had a flood in my basement and I didn't have any backup. Nothing like that happened here. There was a undisputed record that that Mr. Nevitt could not produce documents for $925,000 in loans. We think that's substantial and we think it was necessary for us to have records in order for us to do our job in this case. But ultimately, that wasn't the amount that the court determined records weren't produced for. Ultimately, the court determined that it couldn't that the debtor couldn't produce records for a total of $381,000 out of $7 million worth of loan proceeds received over the over the period preceding the final. Well, correct, but only after reducing the amount based upon based on justification. In other words, in Bell, the only record, the only record that was produced was a checkpoint check register showing the payment of business expenses. In Gage, the only record was, again, a checkpoint check register that was produced that the court said was inadequate on its face. And so Mr. Nevitt essentially received credit for his testimony, even when it contradicted the records that he did produce. So is that a finding of fact that we should review that's clearly erroneous? Or is that determination that the judge has made a justification that's de novo review because it's a it's an application of the facts to the law and it's a mixed question of And we do think they get clearly erroneous, but we think they're essentially undisputed. What is potentially disputed material fact is what was reasonable for Mr. Nevitt to to maintain. And that is really more the application of the law to the undisputed facts here. A sophisticated investor who had borrowed $7 million from creditors and couldn't account for what he did with the money, with the exception of producing very limited check registers. All right, well, we've gone way over time on a very interesting issue. Judges Breaker and Gann, I think in fairness, we need to give Mr. Williams a few minutes for rebuttal, which will make time just about even. So, Mr. Williams, you've got about five minutes. Mr. Williams, you're muted. You're still muted. Yeah. Can you hear me now? Yes. I apologize. No, I'll be very brief. I think the questions from Judge Gann raise an important point. The burden that the U.S. trustee had here was whether there's available written evidence made or and preserved from  business transactions for a reasonable period in the past may be ascertained. When we talk about missing records, I will concede that the absence of records in the right circumstance may raise an inference that there is not available written evidence to demonstrate. It does more than that, though, doesn't it? You know, reading from Keneva at page 762, the Ninth Circuit says, quote, Thus, we hold that when a debtor owns and controls numerous business entities and engages in substantial financial transactions, the complete absence of recorded information related to those entities and transactions establishes a prima facie violation of 11 U.S.C. Section 727 A3, end quote. I don't I don't disagree, Your Honor. And where is it? Four hundred thousand dollars with no explanation. A substantial transaction where somebody has has borrowed seven million was unable initially to give evidence of one point five and then through a series going back into summary judgment then explains disposition of that one point five. Your Honor, to answer your question, I think Keneva has to be understood in the context in which it was decided. But well, that's a tall task for a BAP when the Ninth Circuit is saying we hold. Sure, sure. But but the case stands for the proposition decided in the facts in Keneva and why the lack of records draws a strong inference in that case that that creates the prima facie finding is because the transaction in question was within a year. Well, but that's all that's all Keneva could deal with. Right. But why doesn't that establish the process then is it is then the shifting burden to justification. Why is that a problem here? Because of the amount of time that's involved. And that's why that goes to justification. But the further out that you get, the less relevant the prior transaction is in the absence or availability of records are to what to the to the present financial condition of the petitioner at that point. And that's why Keneva is is different from this case, because that temporal proximity was so close. And that's why the decision in Keneva says what it says. That in that instance, I will agree. And I think this court. How is how is the U.S. trustee acting for the benefit of the unsecured creditors supposed to know that or just take the debtor's word that 400000 isn't buried in the backyard? Isn't, you know, in an offshore camp. How are they supposed to prove? Yes, we're satisfied that that that 400000 is accounted for and is not material now. Well, when we have nothing, a 400000 dollar investment to somebody who's borrowed seven million can't show, can't can't give a document, can't point to the check register and contra contrast to the other. How are they supposed to prove that negative? My point is, is it's it's not the debtor's obligation to make that prima facie showing. But it's a debtor's obligation to maintain the documents. Correct. But only to the extent that the lack of the lack of documents or the presence of documents reflects on the ascertain ability of of the condition financial condition at the time the petition is filed. And so to answer your question, the U.S. trustee would have to say there's no records and then demonstrate that there can be no accounting or that there can be no way of tracking where these proceeds went in a way that would be that would hinder the court from understanding what the financial condition of the bankrupt party was at the time the petition was filed. That's the missing link. And I think how are they supposed to do that, though, if there's no records of the underlying transaction, which the debtor was obligated to keep? And it is not unreasonable to impose that because the debtor was dealing in substantial amounts of like transactions. My point, your honor, I don't think that we're disagreeing, I guess what I'm saying is my point is that the absence of records can be some evidence, but where we're talking about records that are six years out, the inference that the lack of those records reflects on the present financial condition of the of the petitioner becomes more attenuated. And that's why this case is different than Keneva. That's why that's why in this instance, the U.S. trustee had more of a burden than just to point to the absence of these records. And this is particularly true when what we believe was the reasonable burden of time, the three years from 2012 to 2015, Nevit supplied adequate records with respect to what his financial condition was. And we believe those records were sufficient for the U.S. trustee to determine and to satisfy its burden of of demonstrating what that financial condition was and saying those records were not enough. Is it a problem that that the story changed? That, you know, for Bell, we bought a million shares in location based technology with five hundred thousand dollars. Oops, no, I used it for my my Amex and personal expenses. You know, I think that doesn't you know, that's part of the problem. Well, if we're making credibility, if we're making credibility determinations, though, at summary judgment, I think we're further veering into what about that trial? What about that trial when all that evidence was presented? If if if the U.S. trustee did not satisfy its initial burden, then that issue should have been tried and summary judgment should have been denied. And that's our position, that they did not satisfy their their burden, that there was a three year look back to demonstrate that it's financial. And what was the basis for the three year look back? I mean, what what where is that? Isn't that a I mean, again, isn't that a factual question? No, that that we take that position because that was the period in time in which the records that it produced encompassed that period of time. And there was never there was never an argument that with respect to that period of time that those records were not sufficient to demonstrate financial condition as to that period of time. That's why I'm missing one point five. Well, no, because when we break that down, most of that of the one point five, the Bell loan again, later there was found to be sufficient evidence with respect to Bell, except for nine thousand. And so we're really talking about Pullman, which goes back to originally to December of oh nine. I think I can circle circle the the wagon several times, so I we've gone over. Thank you both for your arguments. Thank you. Thank you. It will be submitted. Madam Clerk, can we call the last matter, please?
judges: Brand, Spraker, Gan